**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON**

**TONYA MAE JENKINS,**

  **Plaintiff,**

**v.**             **CASE NO. 3:14-cv-17028**
**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

  **Defendant.**

## MEMORANDUM OPINION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) and Brief in Support of Defendant's Decision (ECF No. 14).

### Background

Tonya Mae Jenkins, Plaintiff (hereinafter Claimant), applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act on January 3, 2011, alleging disability beginning on April 1, 2002  (Tr. at 144-149).  The claim was denied initially on April 12, 2011 (Tr.at 77-81), and upon reconsideration on September 21, 2011(Tr. at 88-94).  Claimant filed a request for hearing by an Administrative Law Judge on September 29, 2011(Tr. at 95-97).  In her request for a hearing before an Administrative Law Judge (ALJ), Claimant stated that she disagreed with the determination made on her claim because her impairments rendered her disabled under social security regulations (Tr. at 95).  Claimant appeared in person and testified at a hearing held in Huntington, West Virginia on October 24, 2012 (Tr. at 27-57).  In the Decision dated December 7, 2012, the ALJ determined that the Claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act (Tr. at 8-26).  On February 8, 2013, Claimant filed a

Request for Review of the Hearing Decision of the ALJ because the decision was not supported by substantial evidence (Tr. at 7).  On March 24, 2014, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision.  Therefore, we have denied your request for review" (Tr. at 1-6).  The Appeals Council stated that it considered the Claimant's disagreement with the decision, the additional evidence[1] listed on the Order of Appeals Council and found that this information did not provide a basis for changing the ALJ's decision (Tr. at 1-6).

On May 28, 2014, Claimant bought the present action requesting that the decision of the Commissioner should be reversed or remanded by this Court because the decision is not supported by substantial evidence, and/or because the Commissioner committed other error.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2014).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id*. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id*. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id*. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in

---

[1] Claimant's attorney's contentions dated February 9, 2013, were admitted into evidence by the Appeals Council and labeled as Exhibit B14E (Tr. at 4).

Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the application date, December 2, 2010 (Tr. at 13). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of posttraumatic stress disorder (PTSD), bipolar disorder, anxiety disorder and borderline intellectual functioning (BIF) (Tr. at 14). At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 16). The ALJ then found that Claimant has a residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following nonexertional limitations: sufficient residual exists for repetitive routine tasks of a simple nature in setting where social demand is low (no crowds and limited contact with public), as well as no

intensive team projects (Tr. at 17).  As a result, Claimant can return to her past relevant work as a convenience store cashier, cook, cleaner, dishwasher, stock clerk, telemarketer and hotel/motel housekeeper (Tr. at 21). On this basis, benefits were denied. (*Id.*)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 38 years old at the time of the hearing (Tr. at 34).  She graduated from high school and went to the Huntington Junior College for approximately a year.  (*Id.*)  Claimant was married but separated on the hearing date.  She has two children.

The Medical Record

On December 6, 2010, Claimant's former treating psychiatrist, Nika Razavipour, M.D., reported that Claimant ran out of her medication.  She diagnosed Claimant with post-traumatic stress disorder (PTSD), anxiety disorder, and major depressive disorder (Tr. at 538).

On February 3, 2011, Dr. Razavipour indicated in a prescription pad that Claimant was unable to work and was on psychotropic medication (Tr. at 187).  On February 22, 2011, Claimant completed a Function Report – Adult when she reported that her daily activities consisted of watching television, doing daily chores and taking care of her pets (Tr. at 188).  She indicated going shopping in stores and by mail, and shopping for groceries (Tr. at 190).  She spends time with her sister and goes to sporting events with her husband and children (Tr. at 191).

On March 14, 2011, state agency medical consultant, Rogelio Lim, M.D., reviewed Claimant's medical record and completed a Physical Residual Functional Capacity Assessment. Dr. Lim reported that Claimant had no established exertional, postural, manipulative or environmental limitations (Tr. at 729-732).   He reported that objective findings were unremarkable, non-severe or slight (Tr. at 735).

On March 22, 2011, state agency medical consultant, H. Hoback Clark, M.D., reviewed Claimant's medical record and reported that she worked as a cook, cashier, stock person, dishwasher, food service maid, and telemarketer, and stopped working in April 2002 because of pregnancy (Tr. at 750).

On May 13, 2011, Dr. Razavipour completed an Adult Psychiatric Review and noted that Claimant's speech was clear and coherent, her thought process was goal-directed, her insight and judgment were fair, and her intelligence was average (Tr. at 761).  She diagnosed Claimant with PTSD, major depressive disorder, anxiety, and a global assessment of functioning (GAF) score of

52, which corresponds to moderate health symptoms, or moderate difficulty in social, occupational or school functioning (Tr. at 762).

On August 22, 2011, state agency psychologist Lisa Tate, M.A., saw Claimant for a psychological evaluation (Tr. at 775). Ms. Tate noted that Claimant started having PTSD from finding her sister's baby who had died from SIDS, and that the identified symptom of PTSD was reported as excessive startle response. Claimant also reported depression, anxiety, bipolar disorder, and medical problems (Tr. at 776). Ms. Tate indicated that Claimant had no recent illnesses, injuries, or hospitalizations, and that her current medical problems were reported as allergies, kidney stone, hypertension, and sinus problems. Claimant's prescription medication include Paxil, Wellbutrin, Inderal, Seroquel, Vistaril, and Zantac. No medication side effects were reported. Ms. Tate reported that Claimant last worked in approximately 1997 and 1998 as a gas station/convenience store employee, worked for one year before becoming pregnant, and reported that her husband did not want her to work (Tr. at 777). Upon mental status evaluation, Ms. Tate reported that Claimant was alert throughout the evaluation and oriented to person, place, time, and date; had depressed mood, a mildly restricted affect, logical and coherent thought processes, and no indication of delusions, obsessive thoughts or compulsive behaviors; and reported no unusual perceptual experiences. Claimant had fair insight, her judgment was within normal limits, she denied suicidal or homicidal ideation, she had moderate immediate memory and mildly deficient recent memory, and her remote memory was within normal limits. Claimant's concentration was mildly deficient and her psychomotor behavior was normal (Tr. at 778). The psychologist diagnosed Claimant with major depressive disorder, single episode, moderate, chronic with anxious features and borderline intellectual functioning. She also reported that Claimant's social functioning, persistence, and pace were within normal limits.

6

On August 25, 2011, state agency medical consultant Stephen Nutter, M.D., saw Claimant for an internal medicine examination.  Claimant complained of back and neck pain.  Upon examination, Dr. Nutter found that Claimant ambulated with a normal gait, did not require use of a handheld assistive device, and appeared stable at station and comfortable in the supine and sitting positions.  He noted Claimant was able to walk on her heels and toes, and was able to perform tandem gait and squat, but had complaints of back pain with squatting.  He noted that Claimant's intellectual functioning appeared normal and that her recent and remote memory for medical events was good.  He found no evidence of thyromegaly, palpable masses, lymphadenopathy, jugulovenous distention or hepatojugular reflux upon examination of her neck.  He noted cervical spine pain and tenderness to the paraspinal muscles and the spinous processes, no evidence of paravertebral muscle spasm, 45 degrees of flexion and extension, 30 degrees of lateral bending bilaterally and 80 degrees of rotation bilaterally.  He also found dorsolumbar spine normal curvature, no evidence of paravertebral muscle spasm, no tenderness to percussion of the spinous processes, and normal straight leg raising in the sitting and supine positions.  He found that Claimant was able to stand on one leg at a time, had minimal difficulty balancing, was able to bend forward at the waist to 70 degrees, exhibited lateral bending of the spine to 25 degrees on the right and 20 degrees on the left, and complained of pain with range of motion testing of the lumbar spine.  He found no hip tenderness, redness, warmth, swelling, or crepitus, and range of motion of the hips with the knees flexed was to 100 degrees bilaterally (Tr. at 770-774).  He diagnosed Claimant with chronic cervical and lumbar spine strain without evidence of radiculopathy.  Dr. Nutter summarized that Claimant had some neck pain and tenderness, and back pain with mildly reduced range of motion of the back and neck.  He stated Claimant's straight leg

raising test was negative for radiculopathy, deep tendon reflexes were brisk and the sensory and motor modalities were well preserved, and there was no evidence of weakness (Tr. at 774).

On September 17, 2011, state agency medical consultant Thomas Lauderman, D.O., reviewed Plaintiff's medical evidence record and completed a Physical Residual Functional Capacity Assessment.  Dr. Lauderman reported that Claimant did not have any exertional, postural, manipulative, communicative, or environmental limitations (Tr. at 782-785, 788).  On this date, state agency psychological consultant G. David Allen, Ph.D., also reviewed Claimant's medical evidence record and completed a Mental Residual Functional Capacity Assessment.  Dr. Allen reported that Claimant was moderately limited in her ability to:  understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and interact appropriately with the general public (Tr. at 789-790).  Dr. Lauderman reported that the course of Claimant's illness seemed to wax and wane, with good days and not, and that sufficient residual exists for repetitive routine tasks of a simple nature in settings where social demand is low and no intensive team projects (Tr. at 791).  Dr. Lauderman also reported that Claimant's activities of daily living were mildly restricted, and that she had moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence or pace (Tr. 803). Records from Prestera Center, Inc., show that Claimant underwent an Adult Psychiatric Review in December 2011 (Tr. at 851-853).  Pursuant to a mental status evaluation, Claimant was diagnosed with clear and coherent speech, no noted thought content deficits, goal-directed thought process, and fair concentration, insight, and judgment (Tr. at 851).  A July 26, 2012 mental status evaluation shows that Claimant's appearance, sociability, speech, and thought content were within normal limits, she was oriented to person, place, situation, and time, her recall memory and coping

ability were normal, and her affect was appropriate (Tr. at 863-864).  The record also show that Claimant cancelled or was a "no show" for scheduled appointments (Tr. at 869-887).

Claimant saw a therapist for mental health counseling for her anxiety and depression from August 7, 2012,[2] through October 2012.  David J. Humphreys, M.D., co-signed the reports (Tr. at 821-834).  By September 4, 2012, the therapist reported that Claimant's depression and anxiety were normal and moderate in severity, her mood was normal, and her thought process, insight, memory, and cognitive function were intact.  She was oriented as to time, place, and people.  Upon mental status examination, Claimant did not have hallucinations or delusions (Tr. at 827). Claimant reported that she was beginning to feel better (Tr. at 826).

On October 19, 2012, Claimant's attorney referred her to psychologist Richard Reeser, M.A., for a Psychological Evaluation to help in disability determination (Tr. at 888).  Upon mental status evaluation, Mr. Reeser reported that Claimant's affect was flat, her mood depressed and anxious, her thought processes logically formed with normal flow, her judgment, insight, remote and recent memory were fair and she was oriented to person, place, month, and year.  He reported that test results were indicative of major depression and anxiety disorder.  He diagnosed Claimant with depressive and anxiety disorder, moderate and recurrent major depressive disorder and generalized anxiety disorder by history, schizoaffective disorder rule out PTSD, borderline intellectual functioning by history rule out dependent and schizoid personality disorder, and a GAF of 50 (Tr. at 889).  He concluded that Claimant's mental health problems significantly blocked her ability to secure and maintain gainful employment, but appeared to have the capacity to manage any funds that may be awarded to her (Tr. at 890).  In a Medical Source Statement of

---

[2] On August 7, 2012, David J. Humpreys, M.D., reported Claimant's chief complaints to be depression, anxiety and grief (Tr. at 821).  He reported that Claimant's grooming was neat but her facial features were anxious, tearful and depressed.  Her affect was hopeless, flat, depressed, anxious and guilty.  Claimant's insight was impaired and her mood was depressed and anxious.  (*Id.*)  Her cognitive functioning and judgment were impaired.

Ability to do Work-Related Activities (Mental), Mr. Reeser indicated that Claimant ability to understand and remember simple instructions was mildly limited, her ability to carry out simple instructions and make judgments on simple work-related decisions was moderately limited, and her ability to understand, remember, and carry out complex instructions, and to make judgments on complex work-related decisions were extremely limited (Tr. at 891).  He also indicated that Claimant's ability to interact appropriately with supervisors, co-workers, and the public, and to respond to changes in a routine work setting were markedly limited (Tr. at 892).

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ's decision is not supported by substantial evidence due to the ALJ's failure to give proper weight to the opinions of her treating psychiatrists and other medical sources (ECF No. 11).  Claimant argues that the evidence of record demonstrates that her impairments prevent her from engaging in substantial gainful activity.  Defendant asserts that the ALJ appropriately weighed the opinion of Claimant's treating and consulting medical sources (ECF No. 14).

<u>Discussion</u>

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Claimant "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

<u>Treating Physician</u>

Claimant argues the following:

> The Administrative Law Judge failed to give proper weight to the opinion of Nika Razavipour, M.D., the Plaintiff's former treating psychiatrist, who stated that the Plaintiff is disabled (TR. 187). Dr. Razavipour's opinion is reasonable in light of the Plaintiff's continuing struggle with posttraumatic stress disorder, major depressive disorder, and anxiety disorder. As support for Dr. Razavipour's opinion, attention is called to the opinion of David J. Humphreys, M.D., the Plaintiff's current treating psychiatrist, whose progress notes reveal that the Plaintiff suffers from chronic unstable moderate recurrent major depression along with chronic uncontrolled generalized anxiety disorder (TR. 821-828, 829-834).

…

[T]he Administrative Law Judge did not give proper consideration to the opinions of several consulting sources as follows:

a.     Stephen Nutter, M.D., a consulting examining physician, stated that the Plaintiff suffers from chronic cervical and lumbar strain (TR. 770-774).

b.     Lisa C. Tate, M.A., a consulting examining psychologist, stated that the Plaintiff suffers from chronic major depressive disorder with anxious features along with borderline intellectual functioning (775-780).

c.     Richard Reeser, M.A., a consulting examining psychologist, stated that the Plaintiff has a depressive disorder, anxiety disorder, major depressive disorder (recurrent, moderate), and a generalized anxiety disorder with a GAF of 50 (TR. 888-890). Going further, Reeser opined that the Plaintiff would have "Marked" limitations in her ability to interact appropriately with supervisors, coworkers, and the public as well as "Marked" limitations in her ability to respond to changes in a routine work setting (TR. 891-893). Reeser's opinion is critical in as much as the Vocational Expert testified that the Plaintiff would be unable to engage in substantial gainful activity if Reeser's findings are accurate (TR. 56). (ECF No. 11).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2014). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2014). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)

(2014). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.152.

The ALJ gave little weight to the opinion of treating psychiatrist, Dr. Razavipour. The ALJ stated that although Dr. Razavipour noted that Claimant was unable to work, she never mentioned a functional rational. Dr. Razavipour's opinion that Claimant is unable to work is inconsistent with her subsequent opinion. Dr. Razavipour's note opining that Claimant is unable to work was written in February 2011. In May 2011, Dr. Razavipour completed an Adult Psychiatric Review and noted that Claimant's speech was clear, her insight and judgment were fair and that her intelligence was average. Furthermore, finding someone "disabled" is a decision of the Commissioner and should be supported by comparable treatment notes" (Tr. at 20).

Claimant also argues that the ALJ did not give proper consideration to the opinions of state agency medical consultant Stephen Nutter, M.D., and psychologists Lisa Tate, M.A., and Richard

Reeser, M.A. (ECF No. 11).  However, the ALJ demonstrated why he did not rely upon Dr. Nutter's opinion (Tr. at 15). The ALJ reported that Dr. Nutter's physical examination of Claimant revealed that her gait was normal, her hearing was adequate, her chest was symmetrical, her lungs were clear, her neurological evaluation was intact, and her muscle strength was unremarkable. (*Id.*)  The ALJ also found that although Dr. Nutter offered a diagnosis of chronic cervical and lumbar strain, there was no evidence of radiculopathy.

Likewise, Claimant's argument that the ALJ did not give proper consideration to the opinion of Ms. Tate is inaccurate.   The Psychological Evaluation of Claimant performed by Ms. Tate on August 22, 2011, reflects that Claimant was alert throughout the evaluation, observed as feeling depressed, demonstrating mildly restricted affect, reported that her insight was fair and judgment was within normal limits (Tr. at 777-778). Claimant's social functioning was reported as within normal limits (Tr. at 778).  Her concentration was mildly deficient and her persistence was within normal limits.  Ms. Tate's opinion was properly considered and addressed in the ALJ's decision.

Lastly, Claimant argues that consulting examining psychologist, Richard Reeser, M.A., stated that Claimant has a depressive disorder, anxiety disorder, major depressive disorder (recurrent, moderate), and a generalized anxiety disorder with GAF of 50.  Claimant asserts that the ALJ failed to give Mr. Reeser's opinion appropriate weight (Tr. at 888-890). In regards to Mr. Reeser's opinion evidence, the ALJ gave Mr. Reeser's opinion no weight (Tr. at 20).  The ALJ found that Mr. Reeser's assessment dated October 22, 2012, is inconsistent and unsupported by the overall evidence of record.  Mr. Reeser's treatment notes reported that Claimant was noncompliant with her oral treatment regimen and mental health treatment.  The ALJ stated "Most notably, when taking her medication, she sees improved and feels normal" (Tr. at 21).

The ALJ is not required to give controlling weight to any treating physician's opinion when the opinion is not supported by clinical evidence, is internally inconsistent or is not consistent with other evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Upon review of the ALJ's decision, it is clear that the ALJ considered, analyzed and weighed the opinions of Claimant's treating physicians and psychiatrists based upon all the evidence of record.

After a careful consideration of the evidence of record, this Court finds that the Commissioner's decision is supported by substantial evidence and the ALJ properly weighed the medical opinions on the record.  Accordingly, by Judgment Order entered this day, Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) is **DENIED**, Defendant's Brief in Support of Defendant's Decision (ECF No. 14) is GRANTED, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

Date:   September 30, 2015.

Dwane L. Tinsley
United States Magistrate Judge